53 CCPA
Application of James G. FORD.
Patent Appeal No. 7462.

United States Court of Customs
and Patent Appeals.
Nov. 10, 1965.

———◆———

Frederick Shapoe, Pittsburgh, Pa., Gordon S. Parker, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 14–17, 20 and 21 of appellant's application [1] entitled "Stabilization of Cellulosic Insulation and Electrical Apparatus Embodying Such Insulation." No claim was allowed.

Appellant's application discloses, in material substance, that cellulosic materials such as paper, cotton cloth, cotton tape, pressboard and wood deteriorate relatively rapidly at temperatures in excess of 100°C. when in contact with air. Deterioration is more rapid at such elevated temperatures when the materials are in contact with liquid dielectrics such as transformer oil, especially when the oil is oxidized. The object of the claimed invention is to increase the thermal stability of cellulosic insulation by incorporating therein a small quantity of at least one stabilizing compound to reduce the rate of loss of strength. The compound employed is selected from the group consisting of melamine, derivatives of melamine such as triethylmelamine, triphenylmelamine, diallylmelamine, tris-tertiary butylmelamine, and N-tertiary butylmelamine, polyacrylamide and diphenyl guanidine. The stabilizing compounds may be applied by either adding them to the furnish in the paper mill, so that the paper contains the stabilizer in the fiber structure, or it may be sifted or otherwise applied to the paper as the latter is wrapped about conductors or coils in electrical apparatus.

It is further stated such stabilized insulating materials are particularly satisfactory for use in electrical apparatus containing electrical conductors insulated with certain specific wire enamel compositions. The wire enamel compositions may be prepared by the use of one of several resins, such as resins comprising a mixture of a glycidyl polyether and urea-aldehyde, or melamine-aldehyde resins may be used. Other resins comprise a mixture of a heat-hardenable organo-siloxane and a specific polyamide reaction product, another comprises specific polyamide reaction products. A polyvinyl formalphenol-aldehyde resin may be employed in forming the enameled wire of the claimed invention.

_____
1. Serial No. 839,166, filed September 10, 1959.

The appealed claims are represented by claims 14 and 15:

14. A new article of manufacture comprising cellulosic paper insulation thermally stabilized by the incorporation therein of at least one stabilizing agent selected from the group consisting of melamine, triethylmelamine, triphenylmelamine, diallylmelamine, tris-tertiary butylmelamine, N-tertiary butylmelamine, and diphenyl guanidine, said stabilizing agent being incorporated within the body of the paper insulation and uniformly distributed throughout the interstices within the cellulosic paper insulation, the total amount of said mixture being within the range of about 0.02% to about 10% by weight based on the weight of the cellulosic insulation.

15. Thermally stabilized electrical apparatus comprising, in combination, (1) an electrical conductor winding provided with a hard, tough, flexible enamel coating which does not soften at temperatures up to about 250° C, (2) cellulosic electrical insulation substantially around the winding, (3) from 0.02% to 10% by weight, based on the total weight of the cellulosic electrical insulation of at least one thermal stabilizing agent selected from the group consisting of melamine, triethylmelamine, triphenylmelamine, diallylmelamine, tris-tertiary butylmelamine, N-tertiary butylmelamine, and diphenyl guanidine, said stabilizer being uniformly distributed throughout the interstices within the cellulosic electrical insulation.

It is noted that claims 14 and 21 call for a cellulosic paper insulation having a melamine stabilizer distributed throughout the interstices of the paper; claim 20 recites an electrical apparatus comprising a conductor with enamel coating with stabilized insulation; claims 16 and 17 recite an electrical apparatus with a liquid dielectric surrounding the conductor and permeating the insulation. Claim 17 recites melamine as the stabilizer. The claims other than 17 recite a group of stabilizers including various types of melamines and diphenyl guanidine.

The following references were relied upon by the board:

| | | |
|---|---|---|
| McCulloch | 2,722,561 | November 1, 1955 |
| Buckwalter | 2,665,733 | January 12, 1954 |
| Studeny et al. | 2,539,558 | January 30, 1951 |
| Scheiber (Australian) | 113,973 | October 1, 1941 |

McCulloch discloses an electrical apparatus comprising an electrical winding, cellulosic electrical insulation around the winding, and from 0.01 to 10 percent by weight of at least one thermal stabilizing agent. The agents disclosed are urea, the substitution derivatives of urea and reaction products of urea. The specification recites that any suitable means may be employed for introducing the compound. A quantity may be poured loosely into the liquid dielectric or a porous envelope or package of the compound such as a cloth bag filled with urea may be suspended in the liquid dielectric, or it may be incorporated into the electrical windings by sifting it between the paper or cotton insulation as it is being wrapped so that it is retained mechanically between the folds of the paper or tape.

Buckwalter discloses protection of cellulose fiber against heat aging by treatment with melamine. The compound may be applied to the fiber by any suitable means. A convenient manner is to immerse the fiber in a solution of melamine for a time sufficient for it to become substantially impregnated with the solution. The fiber usually employed is

ordinary grey cotton fiber. The process, however, may be employed advantageously with the various regenerated cellulose fibers, such as viscose rayon, and it is applicable to native cellulose fibers, such as flax and hemp, as well as to scarred, bleached and mercerized cotton. Instead of immersing the fiber in the solution, the melamine may be incorporated therein in any other suitable manner, such as by spraying or brushing. The patentee states that the improved melamine containing fibers of the invention are susceptible to many other uses where resistance to heat is desirable.

Studeny et al. disclose that dicyandiamide and its lower alkyl and alkylol substitution products are effective as stabilizing agents to retard the deterioration of paper and other felted cellulosic products when incorporated therein in relatively small amounts on the order of about 0.3% to about 10% by weight. It is stated that the process thus administered will prevent loss in tensile strength and in tear and fold resistance when the treated paper is aged or heated. The compound may be added to the paper at any point during or after its formation on a papermaking machine. The stabilizing agents being water-soluble may be incorporated into the paper by impregnation from water solution in conjunction with sizing agents during the finishing process.

Scheiber relates to a process of coating copper wires with superpolyamide compositions and to the coated wires resulting from the process.

The examiner rejected claims 14 and 21 on McCulloch in view of Buckwalter and Studeny et al. and also on Buckwalter in view of Studeny et al. It was the examiner's conclusion: "No invention would be involved to substitute the stabilizing agent of Studeny by a melamine stabilizing agent as disclosed by Buckwalter." The examiner noted that although Studeny et al. does not expressly state that the stabilized cellulosic paper is used for insulating purposes, the use of cellulosic paper as an electrical insulation is well known. We note that

appellant has not challenged this assertion by the examiner. The board affirmed the examiner's rejection of claims 14 and 21 in language appropriate to section 103.

The examiner rejected claims 15–17, and 20 as unpatentable over McCulloch in view of Buckwalter, Studeny et al., and Scheiber. It was the examiner's conclusion that:

> No invention would be involved to apply the cellulose stabilizer as taught by Buckwalter and Studeny to the cellulose insulation disclosed by McCulloch. The enamel coating recited is not seen to be anything other than conventional and is shown to be old by Scheiber. Applicant does not disclose any criticality nor urge that any patentable significance is attributed to its use on the electrical conductors of the apparatus.

The board agreed with the reasoning of the examiner in rejecting these claims.

The issue is obviousness under 35 U.S. C. § 103. Appellant makes four arguments: (1) that Buckwalter relates to nonanalogous art and is therefore an improper or irrelevant reference; (2) that Buckwalter does not disclose treating cellulosic *paper* with melamine; (3) that none of the references suggests that melamine treated paper would be a satisfactory electrical insulator, and (4) that the uniform interstitial distribution of the stabilizer is not suggested by the prior art. We shall consider these arguments in the order stated.

First, it is appellant's contention that Buckwalter is an improper reference because it relates to the tire art which is nonanalogous to the paper insulation art, the art to which the claimed subject matter pertains. However, we believe appellant has interpreted the Buckwalter disclosure too restrictively, as the following passages from the reference reveal:

> This invention relates to the protection of cellulose fibers against deterioration of heat aging.

384

* * * * * *

Another object is to provide articles of manufacture embodying cellulose fibers protected against heat deterioration, such articles of manufacture including cellulose fibers themselves, whether unstranded, stranded or in the form of fabric, and vulcanized rubber articles reinforced with such celloulose fibers, such as pneumatic tire casings reinforced therewith. * * *

* * * * * *

* * * it will be understood that the improved melamine containing cellulose fibers of this invention are susceptible of many other uses where resistance to heat is a desirable characteristic. * * *

While Buckwalter does state that melamine-treated cellulosic fibers are useful to make improved tire cord, a fair reading of that reference *in its entirety* clearly indicates that the teachings therein are to have broader application than merely that one embodiment. There is nothing in Buckwalter, or in the record before us, which would give us reason for disregarding or restricting the clear import of the above-quoted passages.

The next argument is that the Buckwalter reference does not suggest the use of melamine with cellulosic *paper*. We find no merit in this contention. The Buckwalter reference clearly teaches that melamine protects cellulosic fibers in general against thermal deterioration. We can see no basis for the attempted differentiation between cellulosic paper and other cellulosic materials. Nor has appellant given any basis for such a distinction other than to say that the difference exists.

Appellant's third contention is that none of the references suggests that melamine-treated paper would be a satisfactory electrical insulator. This implies that melamine has a *direct beneficial* effect upon the electrical *insulating* properties of cellulose. However, so far as the record reveals, melamine has a direct effect only upon the *thermal properties* of cellulose which result in providing a longer useful life for the cellulosic insulation at elevated temperatures. If appellant means to contend that one of ordinary skill in the art would not think to use melamine as a thermal stabilizer for cellulosic insulation because it would be expected to adversely affect its electrical insulating properties, we again can find nothing in the record to support such a contention. Appellant has not apprised this court of *facts* which would provide a basis for sustaining such an argument. Indeed, the disclosure in McCulloch that liquid dielectrics containing the group $\overset{\displaystyle \diagdown \quad \diagup}{\underset{\displaystyle \diagup \;\; \| \;\; \diagdown}{N\text{—}C\text{—}N}}$ will impart thermal stability to cellulosic insulation would suggest a contrary conclusion, since melamine contains such a chemical group.

Appellant further contends that the uniform interstitial distribution of the stabilizer is not suggested by the prior art. Here again, we disagree with appellant. Studeny et al. clearly teach that the thermal stabilizer for cellulosic paper may be added to the paper at any desired point *during* or after its formation on a papermaking machine. Buckwalter discloses that "melamine may be applied to the cellulose fiber in any suitable manner, conveniently by immersing the fiber to be treated in a solution or dispersion of the melamine for a time sufficient for the fiber to become substantially impregnated with the melamine solution." A Rule 132 affidavit, which was intended to show the advantages of incorporating the stabilizer into the paper at the time of its preparation rather than by sifting onto the finished product as taught by McCulloch, is of no persuasive value because interstitial distribution is specifically taught by the references.

The remaining features of claims 15, 16, 17 and 21, namely, the liquid dielectric and the electrical conductor winding provided with a hard, tough, flexible enamel coating, are clearly taught by the McCulloch and Scheiber references, re-

spectively, as is evident from the above discussion of the prior art references. These features appear from the prior art to be merely conventional components of the general type of electrical apparatus disclosed and claimed.

For the foregoing reasons, we find the arguments advanced by appellant upon which patentability is predicated to be unconvincing. We agree with the board that the subject matter of the appealed claims would have been obvious within the meaning of 35 U.S.C. § 103. Accordingly, we affirm the decision of the Board of Appeals.

Affirmed.

MARTIN, J., took no part in the consideration or decision of this case.

Harvey B. Jacobson, Jacob Shuster, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C., (J. F. Nakamura, Washington D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

**53 CCPA**